D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JUDITH DOUGLAS,

                Plaintiff,

     -against-                             **OPINION AND ORDER**
                                                       **08-CV-1370 (SJF) (WDW)**

LONG ISLAND JEWISH MEDICAL CENTER,

                Defendant.
--------------------------------------------------------X
FEUERSTEIN, J.

I.    Introduction

On April 2, 2008, plaintiff Judith Douglas ("Plaintiff"), proceeding *pro se*, commenced this action against defendants Long Island Jewish Medical Center ("LIJMC" or "Defendant") and Colleen McMahon ("McMahon") alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 et seq. On or about June 16, 2008, Defendants moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and on May 7, 2009, this Court dismissed Plaintiff's Complaint against McMahon. On January 15, 2010, LIJMC moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On February 5, 2010, Plaintiff retained an attorney and requested an "opportunity to supplement Plaintiff's opposition to Defendant's motion for summary judgment." (DE 57-58.) This Court granted Plaintiff's request, and both parties submitted additional briefing on Defendant's motion for summary judgment. For the reasons set forth below, Defendant's motion is granted.

II      Background[1]

Defendant is a non-profit hospital licensed pursuant to Article 28 of the New York Public Health Law, and an eight hundred twenty-seven (827) bed teaching hospital serving the greater metropolitan New York area. (Defendant's 56.1 Statement ("Def. 56.1 Statement"), at ¶¶ 1-2.) On or about May 19, 2003, Defendant hired Plaintiff to work as a patient care associate ("PCA") in its operating room ("OR"). (Id., at ¶ 3.) PCAs in the OR are responsible for: (1) maintaining the operating rooms; (2) preparing rooms for new patients; (3) maintaining, cleaning and sterilizing surgical equipment; (4) assisting physicians during surgical procedures; (5) maintaining stock and inventory; (6) checking patients' vital signs; and (7) performing clerical work. (Id., at ¶ 6; Plaintiff's 56.1 Statement ("Pl. 56.1 Statement"), at ¶ 6.) The PCA position is physically demanding, and a PCA must be able to "lift, turn, position, move and restrain patients on a daily basis" as well as remain on "his or her feet for up to six or seven hours at a time remaining in one position and holding a retractor in place during an operation." (Def. 56.1 Statement, at ¶¶ 5-7; Pl. 56.1 Statement, at ¶¶ 5-7.) As a PCA at LIJMC, Plaintiff belonged to Local 1199, SEIU, United Healthcare Workers East (the "Union"). (Def. 56.1 Statement, at ¶ 9.)

On or about February 25, 2004, Plaintiff suffered a fall while working in Defendant's OR. (Id., at ¶ 11.) As a consequence, she injured her neck and back, and was required to seek treatment from both the LIJMC emergency room and a chiropractor. (Def. 56.1 Statement, at ¶¶

---

[1] The facts are derived from Defendant's statement of material facts pursuant to Local Rule 56.1 and the accompanying declarations and other evidentiary material filed in support of Defendant's motion for summary judgment, as well as Plaintiffs response to Defendant's statement and counterstatement of disputed material facts and the accompanying declarations and evidentiary material filed in response to the motion.

11-13; Pl. 56.1 Statement, at ¶¶ 11-13.) After she missed four (4) to five (5) days of work, the LIJMC Employee Health Services cleared Plaintiff to return to work, and Plaintiff worked throughout the remainder of 2004 without issue. (Def. 56.1 Statement, at ¶¶ 14-15; Pl. 56.1 Statement, at ¶¶ 14-15.)

On or about February 4, 2005, while holding retractors during a procedure that lasted approximately six (6) to seven (7) hours, Plaintiff exacerbated her condition. (Def. 56.1 Statement, at ¶ 17; Pl. 56.1 Statement, at ¶ 17.) Plaintiff's doctors diagnosed Plaintiff with cervical and lumbar radiculitis, and for approximately seven (7) months beginning in February 2005, submitted medical certifications to Defendant indicating that Plaintiff was "totally disabled" and should "stay away from work." (Def. 56.1 Statement, at ¶¶ 18-20; Pl. 56.1 Statement, at ¶¶ 18-20; Affidavit of Christopher G. Gegwich, Esq. ("CGG Aff."), at Ex. U.) As a result, Plaintiff took an extended leave of absence and filed for workers compensation benefits. (Def. 56.1 Statement, at ¶¶ 19, 21; Pl. 56.1 Statement, at ¶¶ 19, 21.)

On February 7, 2005, Plaintiff spoke with Lee Johnson, R.N., an OR supervisor, to determine whether there was any "easier" work that Plaintiff could do. (Def. 56.1 Statement, at ¶¶ 22-23; Pl. 56.1 Statement, at ¶¶ 22-23; Plaintiff's Deposition ("Pl. Dep."), at 29, 75-77-98-98.) However, Ms. Johnson informed Plaintiff that she would need to speak to Diane Simmons, R.N., who at that time, was the Senior Administrative Director of Perioperative Services, and responsible for oversight of the Perioperative Services Department and the OR. (Def. 56.1 Statement, at ¶¶ 24-25; Pl. 56.1 Statement, at ¶¶ 24-25). Ms. Simmons "was ultimately responsible for considering and approving requests for reasonable accommodations . . . [and] had the final say with respect to all accommodation requests." (Declaration of Diane Simmons, R.N.

3

("Simmons Decl."), at ¶ 9.) Plaintiff did not request an accommodation from Ms. Simmons. (Id.; Def. 56.1 Statement, at ¶ 27; Pl. 56.1 Statement, at ¶ 27)

Beginning in September 2005, Plaintiff's doctors indicated that Plaintiff was partially disabled, but could return to work with the following restrictions:

- Not to stand for over 45 minutes without the opportunity to sit down for 5-10 minutes
- Not to repetitively bend, lift, push, pull, or carry
- Not to lift over 15 lbs.
- Not to work in awkward positions
- Not to sit for over 30 minutes without the opportunity to stand up and walk about for 5 minutes
- Not to work over 8 hours/day.

(CGG Aff., Ex. U, W.) On September 12, 2005, Mary Schaefer, R.N., at the LIJMC Employee Health Services, evaluated Plaintiff to determine whether she could return to work as a PCA in the OR. (Def. 56.1 Statement, at ¶¶ 35-36; Pl. 56.1 Statement, at ¶¶ 35-36). Ms. Shaefer contacted the OR to determine whether Plaintiff could return to work with her doctor's restrictions, but the OR supervisor advised Ms. Shaefer that PCAs were not able to work with any physical restrictions, and that no "light duty" assignments were available for PCAs. (Def. 56.1 Statement, at ¶¶ 37-39; Pl. 56.1 Statement, at ¶¶ 37-39.) Accordingly, Employee Health Services declined to clear Plaintiff for work. (Def. 56.1 Statement, at ¶ 38; Pl. 56.1 Statement, at ¶ 38.) Thereafter, Plaintiff did not contact anyone in the OR to request a reasonable accommodation or a transfer to a different position. (Def. 56.1 Statement, at ¶ 41; Pl. 56.1 Statement, at ¶ 41.)

From September 2005 to September 2006, Plaintiff continued her medical leave of absence, and continued to submit certifications from her doctors indicating that she was partially disabled. (Pl. 56.1 Statement, at ¶ 45.) On September 27, 2006, Frances Lau, Defendant's

4

Disability Case Manager, notified Plaintiff that as her doctors "cleared [her] to return to full duty work" and as she had not returned or "provided the Benefits Department with medical documentation from [her] physician to continue [her] leave of absence," if she did not "contact the Benefits Department with updated medical information to extend [her] leave by **10/9/2006**, [she would] be considered on an *Unauthorized Leave of Absence* . . . [and] subject to disciplinary action, which may include termination of employment." (CGG Aff., Ex. AA (emphasis in original).) In response, Plaintiff submitted medical documentation indicating that she was able to perform some work for the following six (6) months, but only that allowing for intermittent sitting and standing, and "no lifting or repetitive bending." (CGG Aff., Ex. BB, at 2.) Plaintiff also notified the OR supervisors that she was unable to return to work as a PCA in the OR. (Def. 56.1 Statement, at ¶ 48; Pl. 56.1 Statement, at ¶ 48.)

As of April 2007, Plaintiff was still physically unable to return to work as a PCA in the OR. (Def. 56.1 Statement, at ¶ 52; Pl. 56.1 Statement, at ¶ 52.) However, she did not contact anyone at LIJMC regarding either a proposed start date, or a transfer to another position. (Def. 56.1 Statement, at ¶¶ 50-51; Pl. 56.1 Statement, at ¶¶ 50-51.) On May 9, 2007, Ms. Simmons informed Plaintiff that her "Union Contract allows for [her] to be out on a medical leave for up to 24 months," and her "24 months were exhausted on 2/7/07." (Simmons Decl., Ex. A.) Accordingly, Defendant was unable to keep Plaintiff's position open any longer, and terminated Plaintiff's employment as of May 4, 2007. (Id.) Ms. Simmons encouraged Plaintiff to apply for a vacant position when she was able to return to work, but Plaintiff never did so. (Id.; Def. 56.1 Statement, at ¶¶ 59-61; Pl. 56.1 Statement, at ¶¶ 59-61.)

On May 22, 2007, Plaintiff filed a complaint with both the New York State Division of

5

Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant terminated her due to her disability. (CGG Aff., Ex. L.) On January 8, 2008, the NYSDHR found that "there is no probable cause to believe that [Defendant] has engaged in . . . the unlawful discriminatory practice complained of." (CGG Aff., Ex. O.) On March 17, 2008, the EEOC adopted the findings of the NYSDHR, and issued a right to sue letter. (CGG Aff., Ex. P.)

III. Discussion

A. Legal Standard

1. Summary Judgment Standard

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 202 (2d Cir. 2007) (citations and quotation marks omitted). "A fact is material when it might affect the outcome of the suit under governing law." <u>Id</u>. An issue of fact is genuine only if "the evidence is such that a

6

reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, VT, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried. If the nonmoving party does not so respond, summary judgment will be entered against him." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." Id. at 532-33 (quotations and citations omitted).

2. Plaintiff's *Pro Se* Status

At the time Plaintiff filed her Complaint and initially opposed Defendant's motion, she was proceeding *pro se*. Where a plaintiff is proceeding *pro se*, the court must review the *pro se* party's supporting papers liberally, and "interpret them to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.1999) (citation and quotation marks omitted); see also Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir.2001). Nevertheless, a *pro*

*se* plaintiff's "bald assertion," completely without evidentiary support is not sufficient to overcome a motion for summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir.1991); see Columbo v. United States Postal Serv., 293 F.Supp.2d 219, 222 (E.D.N.Y.2003) ( "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law") (citation and quotation marks omitted); see also Karl v. Asarco Inc., No. 02 Civ. 5565, 2004 WL 2997872, at *3 (S.D.N.Y. Dec. 23, 2004) (liberal standard does not excuse a *pro se* plaintiff from "following the procedural formalities of summary judgment"); Saldana v. Local 32B-32J Serv. Employer Int'l Union, No. 03 Civ. 1853, 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005) ("Even a *pro se* plaintiff, however, cannot withstand a motion for summary judgment by relying merely on the allegations of the complaint. Rather, when confronted with evidence of facts that would support judgment in the defendant's favor as a matter of law, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts.").

C.  Analysis

1.  Discrimination

To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) that the plaintiff's "employer is subject to the ADA;" (2) that the plaintiff "is disabled within the meaning of the ADA or perceived to be so by [the plaintiff's] employer;" (3) that the plaintiff "was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation;" and (4) that the plaintiff "suffered an adverse employment action because of

8

[the plaintiff's] disability." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir.2008) (citing Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir.2004)).

If the plaintiff meets the burden of establishing a prima facie case, "[t]he burden of production then shifts to defendants, who must offer through the introduction of admissible evidence a non-discriminatory reason for their actions that, if believed by the trier of fact, would support a finding that unlawful discrimination was not a cause of the disputed employment action." Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir.1999) (citing Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 38 (2d Cir.1994)). The burden then shifts back to the plaintiff to "show that the proffered reason was merely a pretext for discrimination, which 'may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more.'" Heyman, 198 F.3d at 72 (quoting Chambers, 43 F.3d at 38) (citations and quotation marks omitted)).

Plaintiff alleges that she was discriminated against upon the basis of her disability when she was "denied employment after returning back to work in 2005 due to doctor's restrictions saying [she] can work but not [in] the same position." (Compl., at 4.) However, Plaintiff fails to establish a prima facie case of discrimination, as she is unable to demonstrate that she was "qualified to perform the essential functions of the job, with or without reasonable accommodation." Kinneary v. City of New York, 601 F.3d 151, 156 (2d Cir. 2010).

Regulations promulgated by the EEOC to implement the ADA define the "essential functions" of a position as "the 'fundamental' job duties of the employment position the

9

individual with a disability holds or desires. . . [which] does not include the 'marginal' functions of the position." Mitchell v. Washinetonville Cent. Sch. Dist., 190 F.3d 1, 8 (2d Cir.1999) (quoting 29 C.F.R. § 1630.2(n)(1)).[2] In determining whether a function is essential, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); see also Shannon v. New York City Transit Auth., 332 F.3d 95, 100 (2d Cir.2003) ("In approaching this inquiry, a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position.") (citing D'Amico v. City of New York, 132 F.3d 145, 151 (2d Cir. 1998). Other evidence of whether a particular function is essential includes, *inter alia*, the amount of time spent on the job performing the function and the consequences of not requiring the individual to perform the function. 29 C.F.R. 1630.2(n)(3); Mitchell, 190 F.3d at 8 n. 3.

A "major portion of a PCA's essential job functions are physical, requiring a high level of physical capability and mobility . . . ." (Simmons Decl., at ¶ 5.) The official job description for a

---

[2] The EEOC states that evidence of whether a particular function is essential may include:

(i) The employer's judgment as to which functions are essential;
(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
(iii) The amount of time spent on the job performing the function;
(iv) The consequences of not requiring the incumbent to perform the function;
(v) The terms of a collective bargaining agreement;
(vi) The work experience of past incumbents in the job; and/or
(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3)).

PCA at LIJMC requires that a PCA have the "[a]bility to operate all medical equipment necessary to perform job duties" as well as the "[a]bility to lift, turn, position, move and restrain patient as required." (CGG Aff., Ex. Q.) Additionally, the description states that PCAs will assist the "health team members by performing a variety of procedures, exams, tests [and] treatments," as well as maintain equipment and transport patients. (Id.) For example, PCAs are "responsible for the very important task in the OR of holding retractors in the operative field during surgical procedures . . . requir[ing] a PCA to be on his or her feet for up to six to seven hours at a time remaining in one position . . . ." (Simmons Decl., at ¶ 5.) During her deposition, Plaintiff indicated that "retracting cases . . . was [her] main skill" and she "could do six, seven cases a day." (Pl. Dep., at 56:3-8.) Defendant does "not allow anyone with any physical restrictions - of any type - to work in the OR . . . [because] allowing a PCA to be on 'light duty' in the OR creates quality of care and patient safety issues." (Simmons Decl., at ¶¶ 6-7.)

Plaintiff herself admits that she is "unable to work in the position [she] held." (Compl., at ¶ 8(3).) She concedes that she:

> knew for [her]self that [she] could not go back to the operating room to stand up for seven and eight hours, because [she] did cases with the surgeons, and [she has] to be bending [her] neck, [she has] to hold instruments as a retractor holder, [she has] to move gas tanks, [she has] to move carts, [she has] to prepare equipment, [she has] to turn over floors, [she has] to go for patients, bring them in and out of the OR. [She] knew [she] wouldn't have been able to do all of that.

(Pl. Dep., at 15:15-24.) Plaintiff also admitted that:

> A:   . . . I have to lift patients, check urine, catheters, and all those these things, and I can't.
>
> Q:   Physically you can't do it?
>
> A:   Physically I can't.

11

Q: So all the jobs you could do as a PCA you can't do now?

A: No.

(Pl. Dep., at 33:14-21.) As Plaintiff cannot perform the essential functions of the PCA position in the OR, she cannot prove a prima facie case of disability pursuant to the ADA. See Shannon v. New York City Transit Auth., 332 F.3d, at 99 (affirming the District Court's holding that a color-blind plaintiff was not qualified to perform the essential functions of a city bus driver position); Lowry v. Eastman Kodak Co., No. 00-9332, 14 Fed.Appx. 27, 2001 WL 682447 (2d Cir. Jun 13, 2001) (holding that a plaintiff, who "admitted he could not perform all the necessary functions" of his job, could not establish a prima facie case); Needle v. Alling & Cory, Inc., 88 F.Supp.2d 100, 106 (W.D.N.Y. 2000) (holding that a plaintiff who could not perform the essential functions of his job due to walking restrictions "failed to establish that he was otherwise qualified for his job"); Micari v. Trans World Airlines, Inc., 43 F.Supp.2d 275, 282 (E.D.N.Y. 1999) (holding that a plaintiff with neck and back problems could not perform the essential functions of an airline mechanic position, and accordingly could not make out a prima facie case of discrimination).

Even assuming, *arguendo*, that Plaintiff had established a prima facie case of discrimination, she has failed to offer evidence "that would tend to show that the proffered reason [for termination] was merely a pretext for discrimination." See Sista v. CDC Ixis North Am., Inc., 445 F.3d 161, 173 (2d Cir.2006). By letter dated September 26, 2006, Defendant informed Plaintiff that if she did not provide Defendant with updated medical information to extend her leave of absence "by 10/9/2006, [she would] be considered on an Unauthorized Leave of Absence . . . [and] subject to disciplinary action, which may include termination of

12

employment. (CGG Aff., Ex. AA.) Although Plaintiff submitted a doctor's certificate indicating that she would be unable to work for six (6) additional months until April 25, 2007, she did not submit further medical documentation. (CGG Aff., Ex. BB; Simmons Decl., Ex. A.) Moreover, the Union's collective bargaining agreement governing Plaintiff's employment permitted her to take a twenty-four (24) month medical leave of absence, which expired on February 7, 2007, several months before Defendant terminated Plaintiff's employment. (CGG Aff., Ex. CC; Simmons Decl., Ex. A.) Terminating an employee for failure to return from a leave of absence is a legitimate, non-discriminatory reason for termination. See Rollins v. New York City Dept. of Educ., Nos. 05 CV 10482, 06 CV 3657, 2008 WL 2736018, at *4 (S.D.N.Y. Jul. 8, 2008) (terminating plaintiff for his failure to return to work was nondiscriminatory); Lyte v. South Cent. Conn. Reg'l Water Auth., 482 F.Supp.2d 252, 265 (D. Conn. 2007) (noting that defendant's decision to discharge the plaintiff because he failed "to return to work following the expiration of his leave period" was legitimate and nondiscriminatory).

Plaintiff contends that "discrimination can be inferred from the fact that the defendants filled plaintiff's position with another employee . . . outside of the protected class." (Supp. Mem. of Law in Opp. to Def.'s Mot., at 10.) While "showing that 'an employer treated plaintiff less favorably than similarly situated employee outside [her] protected group' is a common and accepted means of raising an inference of discrimination," Young v. New York City Dept. of Educ., No. 09 Civ. 6621, 2010 WL 2776835, at *10 (S.D.N.Y. Jul 13, 2010) (quoting Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir.2003), Plaintiff must nevertheless "show she was similarly situated in all material respects." Graham v. LIRR, 230 F.3d 34, 39 (2d Cir. 2000). As previously discussed, Plaintiff was unable to perform the essential tasks of the PCA position, and

13

therefore was not "similarly situated in all material respects" to the employee outside of her protected group who filled her position. Id. Accordingly, as Plaintiff has failed to demonstrate a prima facie case of discrimination and offer any evidence that Defendant's stated reason for her dismissal was merely a pretext for disability discrimination, Defendant's motion for summary judgment on Plaintiff's discrimination claim is granted. See Braun v. Securitas Sec. Services USA, Inc., No. 09-0500-cv, 2010 WL 1461632, at *1 (2d Cir. Apr. 14, 2010) ("[T]he ultimate burden rests with the plaintiff to offer evidence sufficient to support a reasonable inference that prohibited discrimination occurred.") (citations omitted).

2. Reasonable Accommodation

To establish a reasonable accommodation claim under the ADA, a plaintiff must show that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 184 (2d Cir.2006) (citations omitted). "[G]enerally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." Id. at 184 (citations and quotation marks omitted). However, "an employer has a duty reasonably to accommodate an employee's disability if . . . the employer knew or reasonably should have known that the employee was disabled." Brady, 531 F.3d at 135.

A reasonable accommodation as contemplated by the ADA "may include, *inter alia,*

modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, reassignment to a vacant position." McBride v. BIC Consumer Products Manufacturing Company, Inc., 583 F.3d 92, 97 (2d Cir. 2009) (quotations omitted). See also 42 U.S.C. § 12111(9)(B). "The plaintiff bears the initial burden of proving that an accommodation exists that would permit her to perform the essential job functions." Thompson v. New York City Dept. of Probation, NO. 08-0924-CV, 2009 WL 3227321, at *1 (2d Cir. Oct. 8, 2009). The burden then shifts to the defendant to show that the proposed accommodation is unreasonable. Borkowski v. Valley Central School District, 63 F.3d 131, 137-38 (2d Cir.1995) ("It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits. . . . At this point the defendant's burden of persuading the factfinder that the plaintiff's proposed accommodation is unreasonable merges . . . with its burden of showing . . . that the proposed accommodation would cause it to suffer an undue hardship.") A "[r]easonable accommodation does not include modifications that would eliminate an essential job function." Lowry, 14 Fed. Appx., at 30.

Plaintiff has not demonstrated that there are any accommodations that would enable her to perform the essential functions of the PCA position. Instead, at her deposition, Plaintiff admitted that she was unaware of any accommodations that Defendant could have made:

> Q: Now, Miss Douglas, in terms of working as a PCA in the operating room, are you aware of any accommodations that [LIJMC] could have given you, given your restrictions, that would have enabled you to work as a PCA in the operating room?
>
> A: My whole issue is as a PCA if I could not work in the operating room, there were other areas, they could have asked me to go.

> Q: So you're not aware of any accommodation?
>
> A: I don't know if there is, but I'm not aware.

(Pl. Dep., at 97.). Although she admits that she cannot perform the PCA job, Plaintiff contends that she could have performed a less physically demanding job, and that "[p]lacing the burden on plaintiff to . . . apply for a transfer . . . is unlawful." (Supp. Mem. of Law in Opp. to Def.'s Mot., at 9.) While a transfer to a different position may constitute a reasonable accommodation, see 42 U.S.C. § 12111(9), "a plaintiff seeking to recover under the ADA . . . for his employer's failure to transfer him to a vacant position, bears the burden of establishing the existence of an appropriate vacancy." Jackan, 205 F.3d at 568. An employer is not required to transfer the employee if no position is vacant, "nor is the employer obliged to create a new position to accommodate the employee." Parnahay v. United Parcel Service, Inc., 20 Fed.Appx. 53, 56 (2d Cir. 2001).

At an initial conference before United States Magistrate Judge Lois Bloom, Plaintiff stated that she did not ask Defendant to accommodate her by placing her in a different position:

> The Court: . . . did you ever tell them that you were able to come back to a different position with a reasonable accommodation?
>
> Ms. Douglas: No, I never told them that.

(CGG Aff., Ex. G, 25:9-12.) Moreover, Plaintiff conceded that she was not aware of any open positions that she was qualified for. (Pl. Dep., at 90:24-91-12; 102:20 - 103:60.) Therefore, Plaintiff has failed to demonstrate a prima facie case of denial to make a reasonable accommodation. See McBride, 583 F.3d, at 101 (holding that an "employer's failure to engage in a sufficient interactive process [to accommodate the employee] does not form the basis of a claim under the ADA . . . unless she also establishes that, at least

with the aid of some identified accommodation, she was qualified for the position at issue"); Jackan v. New York State Dept. of Labor, 205 F.3d 562, 566 (2d Cir. 2000) ("When a plaintiff brings an action alleging that a defendant violated the ADA by failing to offer a reasonable accommodation, the claim fails unless the plaintiff establishes that an effective accommodation existed that would render her otherwise qualified.") (quotations omitted). See also Kennedy v. Dresser Rand Co., 193 F.3d 120, 122 (2d Cir. 1999) ("In order to establish a prima facie case under the ADA or the Rehabilitation Act, the plaintiff must show, as part of her burden of persuasion, that an effective accommodation exists that would render her otherwise qualified.") (quotations omitted). Accordingly, Defendants' motion for summary judgment on Plaintiff's reasonable accommodation claim is granted.

3. State Law Claims

Plaintiff asserts various state law claims concerning violations of the New York State Human Rights Law and the New York City Human Rights Law. Pursuant to 28 U.S.C. § 1367, a federal district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...." However, a district court "may decline to exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C § 1367(c)(3). Since Plaintiff's federal claims fail as a matter of law, there is no independent basis for federal jurisdiction over Plaintiff's state law claims. See e.g., United Mine Workers of America v.

Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); Hartline v. Gallo, No. 03 Civ.1974, 2006 WL 2850609 (E.D.N.Y. Sept. 30, 2006).

Accordingly, Plaintiff's state law claims are dismissed without prejudice.

IV. Conclusion

For the reasons stated above, Defendant's motion for summary judgment is GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: July ___, 2010
Central Islip, New York